UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES D. LEVY, | ) | |
| REFUND RESEARCH ASSOCIATES, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 04 C 6498 |
| | ) | |
| MARIA PAPPAS, individually and as | ) | Judge George M. Marovich |
| Treasurer of Cook County; PETER | ) | |
| KARAHOLIOS, individually and as former | ) | |
| Counsel for the Treasurer of Cook County; | ) | |
| WILLIAM KORUKULIS, individually and as | ) | |
| Counsel for the Treasurer of Cook County; | ) | |
| JAMES P. CRAWLEY, individually and as | ) | |
| Counsel for the Treasurer of Cook County; | ) | |
| RICHARD A. DEVINE, individually and as | ) | |
| State's Attorney of Cook County, JAMES M. | ) | |
| HOULIHAN, individually and as Assessor of | ) | |
| Cook County; and the COUNTY OF COOK, | ) | |
| a corporate body politic, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Charles D. Levy ("Levy") filed a complaint on behalf of himself and as an

assignee of the rights and claims of Refund Research Associates, Inc. ("Refund Research"), the

other plaintiff. Levy also purports to bring claims "as an agent for various present and former

Cook County taxpayers who were the clients of" Refund Research. Plaintiffs assert two counts

under 42 U.S.C. § 1983 for constitutional violations, three counts for violations of RICO, 18

U.S.C. § 1962 (a), (c) and (d), and state law claims for conspiracy, conversion and tortious

interference with business relationship. Defendants Maria Pappas, Martha Mills, William

Korukulis, Peter Karaholios, Richard A. Devine and James M. Houlihan move pursuant to Rules

12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for an order dismissing the complaint.[1]  For the reasons set forth below, the Court grants in part and denies in part defendants' motion.

## I.    Background

For purposes of this motion to dismiss, the Court takes as true the allegations in the complaint.  The Court also considers the third amended complaint in the case of *Ball v. County of Cook*, Case No. 99 CH 1659 (the "state-court case"), which is pending in the Circuit Court of Cook County and which third amended complaint plaintiff attached to his complaint.  The Court may consider the state-court case without converting the motion to dismiss into a motion for summary judgment because the document is attached to the complaint, is relevant to plaintiffs' claims and does not require discovery to authenticate or disambiguate.  *Tierney v. Vahle*, 304 F.3d 734, 739 (7th Cir. 2002).

Plaintiffs have sued the County of Cook and a number of its employees (each employee in his/her official and individual capacities).  Defendant Maria Pappas ("Pappas") is the Treasurer of Cook County, and defendant William Korukulis ("Korukulis") is the Deputy Treasurer of Cook County.  Defendant Martha Mills ("Mills") is the Chief Counsel for the Treasurer of Cook County.  Defendant James Crawley ("Crawley") is Counsel for the Treasurer of Cook County, and defendant Peter Karaholios was (during a period of time which is not clear from the complaint) Counsel for the Treasurer of Cook County.  Defendant James M. Houlihan

---

[1]Defendants County of Cook and James Crawley have not been served a summons or complaint and, thus, have not answered or moved for dismissal.

("Houlihan") is the Assessor of Cook County.  Defendant Richard H. Devine ("Devine") is the State's Attorney for Cook County.

Levy was the president and sole shareholder of Refund Research, which was an Illinois corporation.  (It is unclear how long Refund Research was in business or when it was dissolved.)  Refund Research was engaged in the business of assisting taxpayers in obtaining real estate tax refunds.  To that end, Refund Research/Levy compared tax records to determine which taxpayers were entitled to but had not received real estate tax refunds.  Then, Levy attempted to contact such taxpayers in an effort to convince each taxpayer to enter into an agreement with Refund Research whereby Refund Research would agree to file for a refund on behalf of the taxpayer and the taxpayer would agree to pay Refund Research one third of any tax refund.

In February 1999, Levy filed a lawsuit (the "state-court case") in the Circuit Court of Cook County against Cook County, Pappas and Edward J. Rosewell ("Rosewell"), the former Treasurer of Cook County.  In the state-court case, Levy alleged a conspiracy (the details of which are not relevant here) to retain for Cook County millions of dollars in tax overpayments instead of either refunding the amounts to taxpayers or turning over the money to the state of Illinois and asserted claims for conversion, fraud, breach of fiduciary duty, conspiracy, unjust enrichment and constructive trust.

Plaintiffs allege that after Levy filed the state-court case, the defendants "embarked on a new conspiracy pursuant to and in furtherance of the conspiracy [alleged in the state-court case], designed and intended to conceal the pre-existing scheme and conspiracy" and to "intimidate the plaintiffs and destroy the plaintiffs' business[.]" (Complt. ¶ 35).  Specifically, plaintiffs allege that defendants engaged in two types of conduct in retaliation for Levy's having filed the state-

court case. First, defendants caused problems for Refund Research and its clients with respect to collecting the clients' tax refunds, and, second, defendants instigated a criminal investigation.

### *Problems with the tax refund system after the state-court suit was filed*

Plaintiffs allege that after Levy filed the state-court case, Levy, Refund Research and its clients began experiencing problems with the tax refund system. Before the lawsuit was filed, Refund Research received a refund check approximately 35 days after the date it filed a refund application. After the lawsuit, Refund Research received a refund check approximately 145 days after it filed a refund application.

Delay was not the only problem plaintiffs faced. Rather, Levy had problems getting refund checks delivered directly to Refund Research. First, in May 1999, Levy had a problem collecting refund checks for clients of Refund Research. An employee of the Treasurer's office called Levy to inform him that some refund checks were ready to be picked up. When Levy arrived to collect the checks, a clerk told Levy that the checks could not be released because the office had lost the forms that authorized the Treasurer's office to release the checks to Levy/Refund Research instead of to the taxpayers themselves. Levy did not have copies of the authorization forms, and the Treasurer's office refused to release the checks to him based on copies of the contracts between the clients and Refund Research as opposed to signed authorization forms. "Many of these checks" remain in the possession of the Treasurer's office. (It is unclear what happened to the remaining checks.) Next, on or about May 25, 1999, Karaholios told Levy that Refund Research did not have the right to conduct its business and that liens filed by Refund Research were invalid. According to the complaint, after this point, refund checks "were no longer delivered to Refund Research." The complaint also alleges (somewhat

contradictorily), that by August 2002, Houlihan, the Cook County Assessor, arranged it so that checks issued to Refund Research clients were mailed directly to the client, rather than to Refund Research. Plaintiffs allege that this change "meant that Refund Research was unlikely to be paid anything by the client for Refund Research's services."

Plaintiffs also complain that employees of the Treasurer's office made it difficult for them to get information. In April 1999, Crawley (then Assistant General Counsel for Treasurer Pappas) informed Levy that incomplete applications for refunds would not be accepted and that the Treasurer's office did not have the personnel to find the "correct CR number" for Levy's applications. Because Levy was being forced to provide complete applications, Levy submitted a FOIA request to inspect the CR book. The Treasurer's office responded that Levy needed to specify a tax year and to pay a copying charge. Levy informed the Treasurer's office (by "telefax") that he did not wish to pay for copying and that he would prefer to inspect the book in person. The Treasurer's office did not respond. In approximately August 1999, Levy was unable to review microfiche records at the Treasurer's office. For the first time, employees at the Treasurer's office informed Levy that in order to obtain a client's microfiche records, Levy would need a notarized power of attorney from his client. Next, in August and September 2001, Levy had difficulty reviewing other records at the Treasurer's office. The Treasurer's office maintains and keeps "CR" books (which contain information about authorized tax refunds) and "JR" books (which contain information about whether the authorized refunds have actually been paid). Levy wanted access to these books both in order to conduct the business of Refund Research and to obtain evidence for his state-court case. When he asked to inspect the CR and JR books in August 2001, he was told he could not. Levy wrote a letter to Mills, who responded

that Levy would be given access to the books.  Despite follow-up visits and letters, Levy has yet

to be given access to the books.  Levy alleges that Mills (and the other employees who failed to

provide Levy with access to the CR and JR books) were acting at Pappas's direction.

In addition, at some point after filing the state-court case, Levy wanted to obtain more

information to support his state-court case.  Accordingly, a third party (the "FOIA requestor"),

allegedly on Levy's behalf, requested a copy of annual reports of unclaimed property submitted

to the Illinois State Treasurer by the Cook County Treasurer.  The FOIA requestor faced the

following difficulties: the Treasurer's office required him to pay $ .25 per page; the Treasurer's

office told him that he could obtain the information online for free, but the information was not,

in fact, online; and once the FOIA requestor paid the copying fee, the report was missing a page.

The complaint alleges that Pappas and her employees in the Treasurer's office knew Levy was

behind the FOIA request.

Finally, individuals at the Treasurer's office have failed to return telephone calls placed

by Levy and at least one of Refund Research's clients.  The Treasurer's office has returned phone

calls placed by refund-seekers not represented by Refund Research.

### Threats of a criminal investigation

Levy also alleges that he was retaliated against with threats of criminal action.  In or

about the same month Levy filed his state-court case, Karaholios told Levy that he had been a

prosecutor and that he was going to put plaintiff Levy out of business.  Levy interpreted the

comment as a threat to institute criminal charges.

In October 2000, Levy was at the Treasurer's office.  In the presence of Pappas, Crawley

and Korukulis, Karaholios told Levy that Levy was "committing fraud by submitting refund

applications using Refund Research's FEIN number instead of the taxpayer's social security number."  Karaholios added that Pappas planned to submit the applications to and file a complaint with the State's attorney.  Pappas picked up the refund applications Levy had with him, waived them at Levy and said, "This is fraud.  I'm going to take this to the State's Attorney."

In April 2001, Amy Huang (a supervisor with the Financial Crimes Investigations Unit of the State's Attorney's office) sent letters to more than 500 clients of Refund Research.  The letters stated, in relevant part:

> Our office is currently conducting a Criminal Grand Jury investigation pertaining to a complaint received from the Cook County Treasurer's office.
> According to records provided by the Cook County Treasurer's office, you filed a Certificate of Error Refund Application . . . , and designated Refund Research Associates, Inc. as Power-of-Attorney to complete the refund application process.
> In order for this office to complete its investigation into said matter, please review the attached application and contact [us] if the information is incorrect.  Our office would like to talk with you regarding the refund you have filed through Refund Research Associates, Inc.

At least once, a representative of the State's Attorney's office went to the home of a Refund Research client to ask the client to verify his signature, which he was able to do.  In May 2001, a Refund Research client telephoned the Treasurer's office and spoke to Ilene Psarras (an employee).  When the client asked about the status of her refund, Ilene Psarras told the Refund Research client that checks payable to Refund Research were not being released because Refund Research was being investigated for cheating clients out of their money.  The State's Attorney never charged Refund Research or Levy with unlawful conduct.

*Plaintiffs' claims*

Based on these allegations, plaintiffs assert eight claims. In Count I, plaintiffs assert that defendants violated 42 U.S.C. § 1983 by conspiring to drive Refund Research out of business in retaliation for Levy's having filed the state-court case and without due process. In Count II, plaintiffs seek relief under 42 U.S.C. § 1983 on the grounds that defendants violated the Equal Protection Clause by maliciously mistreating Levy and Refund Research while treating other taxpayers more favorably. In Counts III, IV and V, plaintiffs assert civil RICO violations, whereby defendants kept millions of dollars of tax refunds that were due to Refund Research and its clients and distributed millions of dollars in refunds to taxpayers "in ways that intentionally assured that Refund Research would not receive its fees from most of those refunds." In Counts VI - VIII, plaintiffs assert state law claims for conspiracy, tortious interference with business relationships and conversion, respectively.

## II.    <u>Standard on a motion to dismiss</u>

The Court may dismiss claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In considering a motion to dismiss, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *McCullah v. Gadert*, 344 F.3d 655, 657 (7th Cir. 2003). On a motion to dismiss, the "issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 724 (7th Cir. 2004) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

**III.** **Discussion**

**A.** **Standing**

Before turning to the merits of the motion to dismiss, the Court first considers standing. The Court must always assure itself that it has jurisdiction. *Weaver v. Hollywood Casino*, 255 F.3d 379, 381 (7th Cir. 2001). Pursuant to Article III of the Constitution, the Court has jurisdiction only over cases or controversies and, thus, "parties seeking to invoke the jurisdiction of federal courts must show that they have standing to sue within the meaning of Article III." *Krislov v. Rednour*, 226 F.3d 851, 857 (7th Cir. 2000). The minimum standing requirements are: (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury would be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). An "injury in fact" is "an invasion of a legally protected interest" which is both "concrete and particularized" and "actual or imminent." *Lujan*, 504 U.S. at 560. The "party invoking federal jurisdiction bears the burden of establishing these elements." *Id*. at 561. On a motion to dismiss, the Court considers whether the plaintiff has adequately *alleged* facts supporting standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Courts also impose "'prudential limitations' on the class of persons who may invoke federal jurisdiction." *Massey v. Helman*, 196 F.3d 727, 739 (7th Cir. 1999). For example, generally, "a litigant must assert his own legal rights and cannot assert the legal rights of a third party." *Massey*, 196 F.3d at 739. A number of concerns underlie this principle. One concern is that "third parties will not adequately represent the individuals whose rights they seek to vindicate." *Massey*, 196 F.3d at 739 (quoting *Retired Chi. Police Ass'n v. City of Chi.*, 76 F.3d

856, 862 (7th Cir. 1996). A plaintiff might, for example, settle cheaply the claims of the third

parties in an attempt to settle dearly his own claims. In addition, where the plaintiff seeks

monetary damages on behalf of others, the others must be present to provide individualized proof

of their claims. *See Warth v. Seldin*, 422 U.S. 490, 515-516 (1975). There, the Supreme Court

explained:

> in the circumstances of this case, the damages claims are not common to the entire
> membership, nor shared by all in equal degree. To the contrary, whatever injury
> may have been suffered is peculiar to the individual member concerned, and both
> the fact and the extent of injury would require individualized proof. Thus, to
> obtain relief in damages, each member of Home Builders who claims injury as a
> result of respondents' practices must be a party to the suit, and Home Builders has
> no standing to claim damages on his behalf.

*Warth*, 422 U.S. 515-516. Finally, third party representation can impair the rights of those

parties, who may have no desire to be represented by a third party and may ultimately be barred

(by *res judicata*, for example) from asserting their own rights. *See Morlan v. Universal Gty. Life*

*Ins. Co.*, 298 F.3d 609, 621 (7th Cir. 2002) ("The possession of a legally protectable interest is a

prerequisite to suing because otherwise the possessor of that interest would find himself unable

to enforce it if another person, an officious intermeddler, had brought suit to enforce it (like a

bounty hunter) first."); *P.O.W.E.R. v. Thompson*, 727 F.3d 167, 173 (7th Cir. 1984) ("the ability

of the actual victim to protect his legal rights may be impaired by the activity of his self-

appointed protectors."). There, the Seventh Circuit concluded that the suit was "in effect an

unauthorized representative action" and stated that "[i]t would be presumptuous of us to

adjudicate issues that touch the welfare of the [individuals whom plaintiffs sought to protect]

more closely than it touches that of the organization that is seeking to improve their condition

from the outside, as it were, when no members of the allegedly injured class are present."

*P.O.W.E.R.*, 727 F.2d at 173.

In this case, Levy attempts to bring claims as "agent for various present and former Cook County taxpayers who were the clients of [Refund Research.]"  Levy does not purport to represent these unnamed (and unidentifiable from the complaint) individuals as a class representative and does not allege that their rights have been assigned to him.  Nor is there any indication that any of these individuals wish to have their claims brought by a third party.  It is unclear whether Levy would adequately represent the interests of the "various" taxpayer clients of Refund Research.  In any case, Levy seeks damages (namely tax refunds) on their behalf, and those refunds cannot be calculated or awarded without making each taxpayer a party.  In addition, the Court is concerned that the rights of the "various" taxpayers will be impaired by this suit, which they may or may not want to have proceed and which could prevent them from asserting their own rights later.  Accordingly, the Court concludes that Levy, like the plaintiffs in *Warth* and *P.O.W.E.R.*, lacks standing to pursue claims on behalf of "various" taxpayer clients of Refund Research.  Those claims are hereby dismissed without prejudice.

### B.    The merits of defendants' motion to dismiss

In an attempt to dismiss plaintiffs' case, defendants first argue that the Court lacks jurisdiction over the case due to the Tax Injunction Act and principles of comity.  The Tax Injunction Act provides:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

28 U.S.C. § 1341. Thus, federal courts have no jurisdiction to hear suits that seek to declare

illegal, enjoin or rescind methods of tax collection. *Wright v. Pappas*, 256 F.3d 635, 636-637

(7th Cir. 2001); *see also Hay v. Indiana State Bd. of Tax Comm'rs.*, 312 F.3d 876 (7th Cir.

2002).

The Tax Injunction Act is not the only principle which bars federal courts from hearing

tax disputes. Rather, "federal courts have expressed a strong preference that issues of state

taxation be litigated in state courts through a suit for refund rather than in federal courts[.]"

*Alcan Aluminum Ltd. v. Department of Revenue of the State of Oregon*, 724 F.2d 1294, 1298 (7th

Cir. 1984). Specifically, principles of comity also prevent federal courts from granting damages

in tax disputes. *Fair Assessment in Real Estate Associate v. McNary*, 454 U.S. 100, 107 (1981).

There, the Supreme Court noted:

> It is upon taxation that the several States chiefly rely to obtain the means to carry
> on their respective governments, and it is of the utmost importance to all of them
> that the modes adopted to enforce the taxes levied should be interfered with as
> little as possible. Any delay in the proceedings of the officers, upon whom the
> duty is devolved of collecting the taxes, may derange the operations of
> government, and thereby cause serious detriment to the public.

*Fair Assessment*, 454 U.S. at 102 (quoting *Dows v. Chicago*, 11 Wall. 108, 110, 20 L.Ed 65

(1871)). The Supreme Court rejected the argument that damages awards would be less intrusive

than injunctive relief because it concluded that in order to award damages, a district court would

necessarily have to conclude that the state tax system was administered unlawfully. *Fair*

*Assessment*, 454 U.S. at 113. Thus, the Court concluded that it had no jurisdiction over damages

claims challenging the validity of a state tax system so long as the state provided plain, adequate

and complete remedies (which the Court defined the same as "plain, speedy and efficient" within the meaning of the Tax Injunction Act). *Fair Assessment*, 454 U.S. at 116 and n. 8.

Plaintiffs argue that they are not challenging the administration of the tax system but rather are complaining about retaliation they suffered after Levy filed his state-court suit. Plaintiffs' argument misses the mark. Retaliation claims brought under § 1983 are not immune from the Tax Injunction Act or principles of comity. *See Fair Assessment*, 454 U.S. at 106 & 116 (§1983 retaliation claim barred by principles of comity); *Schulz v. Washington Cty. Bd. of Supervisors*, 349 F. Supp.2d 375 (N.D. N.Y. 2004). In *Schulz*, the plaintiffs brought suit pursuant to 42 U.S.C. § 1983 alleging that they were retaliated against for complaining that a tax provision was unconstitutional in violation of the First and Fourteenth Amendments to the Constitution. The alleged retaliation consisted of being added to a list of delinquent taxpayers and threatened with additional fines and penalties. The district court held that it lacked jurisdiction over the case since it involved a state tax scheme and because the state offered an adequate remedy. *Schulz*, 349 F. Supp.2d at 381.

In this case, the plaintiffs do not challenge the adequacy of the state remedies, and the Court concludes that the plaintiffs have an adequate state remedy. First, plaintiffs could (if they have not already) bring the claims in the Circuit Court of Cook County. *See Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 512 (1981) (one of the reasons the Court concluded that plaintiff had a "plain, speedy and efficient remedy" was that she was "free to raise her equal protection and due process federal constitutional objections before the Circuit Court of Cook County"); *RTC Commercial Assets Trust 1995-NP3-1 v. Phoenix Bond & Indemnity Co.*, 169 F.3d 448, 454 (7th Cir. 1999) (plaintiff could not show absence of "plain, speedy and efficient remedy" where state

court had concurrent jurisdiction over the claims she attempted to bring in federal court). In addition, Illinois state law provides a procedure for obtaining refunds of overpaid taxes. *See* 35 ILCS 200/20-175 ("If any . . . erroneously assessed taxes have been paid either at sale or otherwise, or have been overpaid by the same claimant or different claimants, the County Collector, upon being satisfied of the facts in the case, shall refund the taxes to the proper claimant. When the County Collector is unable to determine the proper claimant, the circuit court, on the petition of the person paying taxes, or his or her agent, and being satisfied of the facts in the case, shall direct the county collector to refund the taxes and deduct the amount thereof, pro rata, from the moneys due to taxing bodies . . . "). Thus, the plaintiffs have a plain, speedy and efficient remedy in state court. Next, the Court considers whether plaintiffs' particular federal claims essentially seek tax refunds and/or to challenge the administration of the state tax system.

> 1. **Plaintiffs' § 1983 claims**
>
>> a. Count I
>>
>>> i. Tax Injunction Act/Comity

The Court concludes that most of plaintiffs' § 1983 claims are barred by the Tax Injunction Act and principles of comity. In Count I, plaintiffs allege that defendants retaliated against them because Levy engaged in conduct protected by the first amendment: Levy filed the state-court case complaining about the tax refund system. In addition, plaintiffs allege that defendants deprived them of property–their business–without due process of law. Much of what plaintiffs complain about in Count I boils down to complaints about the way defendants administer refunds of real estate taxes in Cook County. First, in the due process claim, plaintiffs

claim that they were deprived of their business of obtaining tax refunds for clients and then retaining 1/3 of the tax refund. This claim is essentially a complaint about the loss of tax refunds (or portions thereof) and is, thus, barred by the Tax Injunction Act and principles of comity. As for the retaliation claim, plaintiffs complain about slow refunds, poor service, lack of access to tax records (which plaintiffs need in order to obtain refunds for their clients)[2] and that various Treasurer's office employees issued refunds directly to taxpayers as opposed to issuing the refunds to Refund Research. These complaints, too, are complaints about the tax refund system and tax refunds. Thus, they are barred by the Tax Injunction Act and principles of comity.

ii.     Remainder of Count I

The only part of Count I that is not barred by the Tax Injunction Act is the claim that defendants retaliated against plaintiffs by launching a criminal investigation against Levy and Refund Research. In this portion of the complaint, plaintiffs allege that they were retaliated against for Levy's having filed the state-court case. Specifically, plaintiffs allege that in approximately February 1999, Karaholios told Levy that he had been a prosecutor and that he was going to put plaintiff Levy out of business. Levy interpreted the comment as a threat to institute criminal charges. In October 2000, Karaholios told Levy that Levy was "committing fraud by submitting refund applications using Refund Research's FEIN number instead of the taxpayer's social security number." At the same time, Pappas picked up the refund applications Levy had with him, waived them at Levy and said, "This is fraud. I'm going to take this to the

---

[2]To the extent plaintiffs are complaining that they needed information from the Treasurer's office to support their state-court case, their remedy is discovery in the state-court case. Federal courts do not solve state-court discovery disputes. The Court also notes that plaintiffs lack standing to bring claims arising out of a third party's problems in making a FOIA request, as plaintiffs allege in paragraphs 39 to 51 of the complaint.

State's Attorney."  Finally, in April 2001, Amy Huang (a supervisor with the Financial Crimes

Investigations Unit of the State's Attorney's office) sent letters to more than 500 clients of

Refund Research.

Since this part of Count I is not barred by the Tax Injunction Act and principles of

comity, the Court considers defendants' argument that plaintiffs fail to state a claim under 42

U.S.C. § 1983.[3]  A claim that defendants launched a criminal investigation in retaliation for the

exercise of first amendment rights is actionable under 42 U.S.C. § 1983.  *Rakovich v. Wade*, 850

F.2d 1180, 1189 (7th Cir. 1987) ("The district court correctly found that an investigation

conducted in retaliation for comments protected by the first amendment could be actionable

under section 1983."); *Maloney v. City of Chi.*, 678 F. Supp. 703, 706 (N.D. Ill. 1987) (plaintiff

stated a claim for a First Amendment violation under § 1983 where he alleged that defendants

undertook a criminal investigation of his financial status to intimidate and harass him in

retaliation for his having filed a lawsuit against the City).

This does not mean, however, that both plaintiffs have stated claims against all of the

defendants.  Only plaintiff Levy states a claim upon which relief may be granted because only

Levy is alleged to have engaged in constitutionally protected conduct (only he filed the state-

court suit).  Accordingly, the Court dismisses without prejudice Refund Research's Count I.

---

[3]The Court notes that the alleged retaliatory conduct is likely time-barred.  Because §1983 does not contain a statute of limitations, federal courts adopt the forum state's statute of limitations for personal injury suits.  *Ashafa v. City of Chi.*, 146 F.3d 459, 461 (7th Cir. 1998) (citing *Wilson v. Garcia*, 471 U.S. 261, 276 (1985)).  The applicable statute of limitations in Illinois is two years.  *Ashafa*, 146 F.3d at 462.  All of the actionable retaliatory conduct alleged in the complaint occurred more than two years before this suit was filed.  Still, because the statute of limitations is an affirmative defense that may be waived, the Court will not, at this time, dismiss the claim *sua sponte* as time-barred.

As for which defendants Levy can pursue with the remainder of Count I, individual liability under § 1983 "does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) (quoting *Sheik-Abdi v. McClellon*, 37 F.3d 1240, 1248 (7th Cir. 1994)). The only defendants alleged to have participated in the constitutional deprivation are Pappas and Karaholios. Accordingly, the Court dismisses without prejudice the remainder of Levy's Count I against defendants Mills, Korukulis, Devine and Houlihan in their individual capacities.

Levy also asserts Count I against defendants in their official capacities. Suits against government officials in their official capacities are suits against the governmental entity. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). In order to state a claim under § 1983 against the governmental entity, one must allege that the constitutional violation resulted from a policy or custom of the governmental entity. *Monell v. Department of Social Services of New York*, 436 U.S. 658, 690-691 (1978). Here, Levy fails to allege that the retaliatory conduct was due to a policy or custom, and the complaint allegations do not raise an inference of such a policy or custom. Accordingly, Levy has failed to state a claim against defendants in their official capacities. The Court dismisses without prejudice the remainder of Count I against defendants in their official capacities.

### b. Count II

In Count II, plaintiffs assert a claim under 42 U.S.C. § 1983 for violation of the Equal Protection Clause of the Fourteenth Amendment. Plaintiffs allege that "defendants maliciously engaged in selective mistreatment of the plaintiff and Refund Research, in contrast with the treatment extended to taxpayers generally, with the intention of destroying the business of refund

research and otherwise harming it and plaintiff Levy." (Complt. ¶ 136). Once again, this claim boils down to complaints about delayed refunds and defendants' ultimate refusal to issue taxpayer refund checks to Refund Research rather than to the taxpayers. (According to the complaint, this made it difficult for Refund Research to collect its contingency fee from the taxpayers.) Such claims about the administration of the tax refund system and attempts to obtain tax refunds are barred by the Tax Injunction Act and principles of comity. Accordingly, Count II is dismissed without prejudice.[4]

---

[4]If the Court had jurisdiction over Count II, it would have dismissed it anyway. Among other problems, plaintiffs fail to state a claim upon which relief may be granted. Plaintiff is correct that courts recognize Equal Protection Claims based on malicious treatment. (Pursuant to 42 U.S.C. § 1983, individuals have a private right of action for violations of the Fourteenth Amendment. Typically, a plaintiff alleges an equal protection claim by alleging disparate treatment based on membership in a protected class, such as race, gender or religion. *See McDonald v. Village of Winnetka*, 371 F.3d 992, 1002 n. 3 (7th Cir. 2004). Alternatively, an individual can bring an equal protection claim as a member of a "class of one." *Id.* at 1001. To state an equal protection claim based on a class of one, one must allege: (1) that "he has been intentionally treated differently from others similarly situated"; and (2) that "there is no rational basis for the difference in treatment or the cause of the differential treatment is a 'totally illegitimate animus' toward the plaintiff by the defendant." *McDonald*, 371 F.3d at 1001.) But the Seventh Circuit strictly applies the "similarly situated" requirement in order "not to constitutionalize all tort law nor to transform every claim for improper provision of municipal services or for improper conduct of an investigation in connection with them into a federal case." *McDonald*, 371 F.3d at 1009. Here, plaintiffs allege that they were treated differently than similarly-situated taxpayers. That allegation will not suffice because plaintiffs were not, as a matter of law, similar to taxpayers–plaintiffs were not taxpayers at all. Rather, plaintiffs were in the business of assisting taxpayers to obtain refunds. Plaintiffs make no allegations that others in a similar line of business were treated more favorably. Accordingly, plaintiffs failed to state a claim for a "class of one" violation of the Equal Protection Clause.

## 2.        Plaintiffs' RICO claims

In Counts III through V, plaintiffs assert civil RICO claims, claiming defendants have violated 18 U.S.C. §§ 1962 (a), (c) and (d).  Section 1962 of Chapter 18 of the United States Code provides:

> (a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.   . . .
>
> *        *        *
>
> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
>
> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. §§ 1962 (a), (c) and (d).

In support of their RICO claims, plaintiffs allege that defendants conspired to keep "millions of dollars of authorized real estate refunds which rightly belonged to Refund Research and its taxpayer clients, as well as other taxpayers or to the State of Illinois[.]" (Complt. ¶ 141). Plaintiffs also allege that defendants distributed tax refunds "to taxpayers in ways that intentionally assured that Refund Research would not receive its fees from most of those refunds."  (Complt. ¶ 141).  According to plaintiffs, the result of the conspiracy is that "taxpayers did not receive the real estate tax refunds to which they are legally entitled" and "Refund Research . . . was intentionally driven out of business."  (Complt. ¶ 142).

These allegations make it clear that plaintiffs' RICO claims are really an attempt to obtain tax refunds and to complain about how the tax system is operated. Plaintiffs want full tax refunds on behalf of their taxpayer clients. Plaintiffs also complain that the way the refunds were issued (directly to taxpayers, rather than to Refund Research) meant that they could not obtain their contingency payments (1/3 of any refund obtained) from their clients. (In other words, Refund Research does not want to have to sue its former clients for breach of contract; it would rather seeks those damages from a deep-pocketed County and its employees.) Such complaints for refunds and about the administration of the tax system are barred by the Tax Injunction Act and principles of comity. The Court lacks jurisdiction over Counts III, IV and V and, accordingly, dismisses them without prejudice.[5]

### 3.    Plaintiffs' state law claims

Finally, defendants argue that the Court should decline to exercise supplemental jurisdiction over plaintiffs' state law claims because no federal question jurisdiction remains. Because the Court has federal question jurisdiction over the remainder of Count I, the Court declines to dismiss plaintiffs' state law claims.

## IV.    Conclusion

For the reasons set forth above, the Court grants in part and denies in part defendants' motion to dismiss. The Court dismisses without prejudice all of the claims plaintiff Levy brings "as agent for various present and former Cook County taxpayers who were the clients of [defendant Refund Research.]" The Court dismisses without prejudice plaintiff Refund Research's Count I. The Court dismisses without prejudice plaintiff Levy's Count I except for

---

[5]Even if the Court had jurisdiction over plaintiffs' RICO claims, the Court would still dismiss them for failure to state a claim and/or because the plaintiffs lack standing.

his § 1983 claim that Pappas and Karaholios (in their individual capacities) retaliated against him by instigating a criminal investigation against him. The Court dismisses plaintiffs' Counts III, IV and V. The Court denies defendants' motion to dismiss Counts VI, VII and VIII.

ENTER:

George M. Marovich
United States District Judge

DATED:
07/01/2005