UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES D. LEVY, | ) | |
| REFUND RESEARCH ASSOCIATES, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 04 C 6498 |
| | ) | |
| MARIA PAPPAS, individually and as | ) | Judge George M. Marovich |
| Treasurer of Cook County; PETER | ) | |
| KARAHOLIOS, individually and as former | ) | |
| Counsel for the Treasurer of Cook County; | ) | |
| WILLIAM KORUKULIS, individually and as | ) | |
| Counsel for the Treasurer of Cook County; | ) | |
| JAMES P. CRAWLEY, individually and as | ) | |
| Counsel for the Treasurer of Cook County; | ) | |
| RICHARD A. DEVINE, individually and as | ) | |
| State's Attorney of Cook County, JAMES M. | ) | |
| HOULIHAN, individually and as Assessor of | ) | |
| Cook County; and the COUNTY OF COOK, | ) | |
| a corporate body politic, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This is the second time the Court has considered dismissing a nearly-identical complaint in this case. The first time around, the Court dismissed most of plaintiffs' claims on jurisdictional and standing grounds. The plaintiffs proceeded to file a first amended complaint that is nearly identical to the original complaint. Before the Court are two motions. First, defendants Maria Pappas ("Pappas"), Peter Karaholios ("Karaholios"), Martha Mills ("Mills"), William Korukulis ("Korukulis"), James Houlihan ("Houlihan") and Richard Devine ("Devine") move to dismiss the complaint. Second, defendants James Crawley ("Crawley") and Cook County move to dismiss the claims against them for failure to serve them with a summons and

complaint within 120 days after plaintiffs filed their complaint. For the reasons set forth below, the Court grants both motions.

**I.      Background**

In his original complaint, plaintiff Charles D. Levy ("Levy") filed a complaint on behalf of himself and as an assignee of the rights and claims of Refund Research Associates, Inc. ("Refund Research"), the other plaintiff. Levy also sought to pursue claims "as an agent for various present and former Cook County taxpayers who were the clients of" Refund Research. In the original complaint, plaintiffs asserted two counts under 42 U.S.C. § 1983 for constitutional violations, three counts for violations of RICO, 18 U.S.C. § 1962 (a), (c) and (d), and state law claims for conspiracy, conversion and tortious interference with business relationship.

The six defendants who had been served filed a motion to dismiss, which the Court granted in part. First, the Court concluded that Levy lacked standing to pursue claims "as an agent for various taxpayers" and dismissed those claims without prejudice. The Court also concluded that most of plaintiffs' complaint was barred by the Tax Injunction Act and principles of comity. Specifically, the Court dismissed without prejudice Count II (one of plaintiffs' § 1983 claims) and Counts III through V (plaintiffs' RICO claims). The Court also concluded that most of Count I (another § 1983 claim) was barred by the Tax Injunction Act and principles of comity, but a small part of Count I was not barred. The part of Count I that was not barred was plaintiffs' claim that defendants launched a criminal investigation against them in retaliation for Levy's having filed a state-court lawsuit against Cook County, Edward J. Rosewell and defendant Pappas. On that claim, the Court concluded that only Levy had stated a claim and against only

defendants Pappas and Karaholios in their individual capacities. Thus, the Court dismissed all of plaintiffs' federal claims except that small part of Count I.

With part of Count I the only remaining federal claim, the two remaining defendants (Pappas and Karaholios) moved to dismiss Count I on statute of limitations grounds. In lieu of a response, plaintiffs Levy and Refund Research filed a first amended complaint. The first amended complaint contains all of the allegations and claims that the Court ruled were barred by the Tax Injunction Act and principles of comity, all of the allegations the Court dismissed for failure to state a claim and a few additional allegations. The only thing missing from the original complaint was Levy's attempt to bring claims on behalf of Refund Research's clients. Defendants filed motions to dismiss plaintiffs' first amended complaint.

For purposes of these motions to dismiss, the Court takes as true the allegations in the first amended complaint. The Court also considers the exhibits attached to plaintiffs' first amended complaint. *See* Fed.R.Civ.P. 10(c). Because the Court outlined the allegations in its previous opinion, the Court will include only the essential allegations here.

Plaintiffs filed suit against Cook County and a number of its employees (each employee in his/her official and individual capacities). Defendant Pappas is the Treasurer of Cook County, and defendant Korukulis is the Deputy Treasurer of Cook County. Defendant Martha Mills ("Mills") is the Chief Counsel for the Treasurer of Cook County. Defendant James Crawley ("Crawley") is Counsel for the Treasurer of Cook County, and defendant Peter Karaholios was (during a period of time which is not clear from the complaint) Counsel for the Treasurer of Cook County. Defendant James M. Houlihan ("Houlihan") is the Assessor of Cook County. Defendant Richard H. Devine ("Devine") is the State's Attorney for Cook County.

Levy was the president and sole shareholder of Refund Research, which was engaged in the business of assisting taxpayers in obtaining real estate tax refunds. To that end, Refund Research/Levy compared tax records to determine which taxpayers were entitled to but had not received real estate tax refunds. Then, Levy attempted to contact such taxpayers in an effort to convince each taxpayer to enter into an agreement with Refund Research whereby Refund Research would agree to file for a refund on behalf of the taxpayer and the taxpayer would agree to pay Refund Research one third of any tax refund.

In February 1999, Levy filed a lawsuit (the "state-court case") in the Circuit Court of Cook County against Cook County, Pappas and Edward J. Rosewell ("Rosewell"), the former Treasurer of Cook County. Plaintiffs allege that after Levy filed the state-court case, the defendants retaliated against them. According to plaintiffs' first amended complaint, defendants retaliated against plaintiffs by instigating a criminal investigation against plaintiffs.

For example, Levy alleges that in or about the same month (i.e., February 1999) that Levy filed his state-court case, Karaholios told Levy that he had been a prosecutor and that he was going to put Levy out of business. Levy interpreted the comment as a threat to institute criminal charges. In October 2000, Levy was at the Treasurer's office. In the presence of Pappas, Crawley and Korukulis, Karaholios told Levy that Levy was "committing fraud by submitting refund applications using Refund Research's FEIN number instead of the taxpayer's social security number." Karaholios added that Pappas planned to submit the applications to and file a complaint with the State's Attorney. Pappas picked up the refund applications Levy had with him, waived them at Levy and said, "This is fraud. I'm going to take this to the State's Attorney."

Plaintiffs also allege that in April 2001, Amy Huang (a supervisor with the Financial Crimes Investigations Unit of the State's Attorney's office) sent letters to more than 500 clients of Refund Research. The letters stated, in relevant part:

> Our office is currently conducting a Criminal Grand Jury investigation pertaining to a complaint received from the Cook County Treasurer's office.
> According to records provided by the Cook County Treasurer's office, you filed a Certificate of Error Refund Application . . . , and designated Refund Research Associates, Inc. as Power-of-Attorney to complete the refund application process. In order for this office to complete its investigation into said matter, please review the attached application and contact [us] if the information is incorrect. Our office would like to talk with you regarding the refund you have filed through Refund Research Associates, Inc.

At least once, a representative of the State's Attorney's office went to the home of a Refund Research client to ask the client to verify his signature, which he was able to do. In May 2001, a Refund Research client telephoned the Treasurer's office and spoke to Ilene Psarras (an employee). When the client asked about the status of her refund, Ilene Psarras told the Refund Research client that checks payable to Refund Research were not being released because Refund Research was being investigated for cheating clients out of their money.

Plaintiffs allege that the investigation continued into 2003 and 2004. In 2003, William Koehler ("Koehler") an investigator for the State's Attorney's office questioned Rosetta Willis ("Willis"), who had worked for Refund Research. Koehler asked Willis about Levy's conduct and business practices. In the spring of 2004, Koehler informed Levy that the State's Attorney would charge him with a criminal offense.

Plaintiffs also allege that investigators from the State's Attorney's Office interviewed French Rankin ("Rankin"), who once worked for Refund Research. The investigators appeared at Rankin's door and said they would read Rankin his rights. Rankin "refused to tell the

investigators that plaintiff Levy was involved in any criminal wrongdoing." In June 2004, Rankin and his attorney met with representatives from the State's Attorney's office. The investigators informed Rankin that they had evidence that Rankin had notarized documents (thereby attesting to the signatures therein) for nineteen Refund Research "clients" who claim never to have signed the documents. Rankin stated that those clients had agreed by telephone to have Refund Research sign the documents for them "to expedite the processing of their refunds." The representatives of the State's Attorney's office allegedly told Rankin that he would be charged with forgery unless he admitted that Levy had told him to forge the signatures. Rankin told the representatives that Levy "never told [him] to sign the clients' names to the documents without their authorization, approval or permission."

The State's Attorney has never charged Levy with a crime.

**II.     Standard on a motion to dismiss**

The Court may dismiss claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In considering a motion to dismiss, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *McCullah v. Gadert*, 344 F.3d 655, 657 (7th Cir. 2003). On a motion to dismiss, the "issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 724 (7th Cir. 2004) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## III.     Discussion

### A.     Failure to serve defendants Crawley and Cook County

The Court first considers the motion filed by named defendants Crawley and Cook County. Plaintiffs filed their original complaint on October 8, 2004. After Crawley and Cook County were properly served on February 10, 2006, some 550 days later, Crawley and Cook County moved to dismiss plaintiffs' claims against them. These defendants argue that plaintiffs' claims against them should be dismissed because they were not served within the 120-day time limit prescribed in Federal Rule of Civil Procedure 4(m). Rule 4(m) of the Federal Rules of Civil Procedure provides:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). The fact that the defendants were ultimately served outside the time period does not mean the Court cannot dismiss the case. *Geiger v. Allen*, 850 F.2d 330, 332 (7th Cir. 1988) ("Rule 4(j) applies equally to defendants who were never served and defendants who were served after the 120-day period had lapsed. [Otherwise], the ability of a defendant to move for dismissal for failure to comply with Rule 4(j) would be virtually meaningless, since many defendants will not be aware that an action is pending until they are served.") (interpreting former Rule 4(j), which was replaced by 4(m) in 1993); *Vitaich v. City of Chi.*, Case No. 94 C 692, 1995 WL 493468 at *4 (N.D. Ill. Aug. 16, 1995) (applying *Geiger* to Rule 4(m)).

The parties disagree about whether these defendants were properly served within 120 days and, if not, whether plaintiffs had "good cause" for the delay.

### 1. Plaintiffs failed to serve these defendants within 120 days.

Plaintiffs argue that they served Crawley and Cook County within four days after the complaint was filed. Plaintiffs assert that they served Cook County by delivering a copy to the Office of the President of the Board of Commissioners of Cook County (i.e., to the office of John H. Stroger, Jr. ("Stroger")), which copy was signed for by Brenda Smith on October 12, 2004. Plaintiffs assert that they served Crawley (who is Counsel to the Cook County Treasurer) by delivering a copy to the Cook County Treasurer's office, which copy was signed for by A. Gentile on October 12, 2004. Defendants argue that they were not properly served in October 2004. Rather, Crawley and Cook County argue that they were not properly served until February 10, 2006.

"It is a weighty matter to receive a formal summons from a court, demanding that one appear to defend the claims set forth in the attached complaint. Perhaps for that reason, federal and state courts alike continue to insist that defendants receive proper service before they are drawn into the litigation." *Troxell v. Fedders of North America, Inc.*, 160 F.3d 381, 382 (7th Cir. 1998). Where a defendant has "challenged sufficiency of service, the burden is on the plaintiff" to demonstrate affirmatively that service has been effected. *Chico v. Officer Miller*, Case No. 05 C 3101, 2005 U.S. Dist. Lexis 24033 at *6 (N.D. Ill. Oct. 19, 2005).

Pursuant to Rule 4(e) of the Federal Rules of Civil Procedure, plaintiffs could have served Crawley, an individual in Illinois, in one of three ways: (1) by personally giving a copy of the complaint and summons to the defendant; (2) by leaving the copies at the defendant's abode with a person of suitable age and discretion; or (3) by personally giving the copies to an agent authorized by the defendant or by operation of law to receive service of process on the defendant's behalf. *See* Fed. R. Civ. P. 4(e); 735 ILCS 5/2-203(a)(1); *Chico*, 2005 U.S. Dist. Lexis 24033 at * 5-6. As the court explained in *Chico*, "an authorized agency does not arise

through implication, rather it is intended to involve only actual, explicit authorization." Here, plaintiffs attempted to serve Crawley by leaving the summons and complaint with one A. Gentile. Plaintiffs have put forth no evidence that Crawley explicitly authorized A. Gentile to accept service on his behalf. Accordingly, the Court concludes that plaintiffs did not properly serve Crawley in October 2004. Rather, Crawley was not served until February 2006.

With respect to Cook County, plaintiffs had the option of providing a copy of the summons and complaint to either Stroger (the President of the Cook County Board of Commissioners) or David Orr (the County Clerk for Cook County). *See* Fed. R. Civ. P. 4(j)(2) ("Service upon a state, municipal corporation, or other governmental organization subject to suit shall be effected by delivering a copy of the summons and of the complaint to its chief executive officer or by serving the summons and complaint in the manner prescribed by the law of that state for the service of summons or other like process upon any such defendant."); 735 ILCS 5/2-211 ("In actions against public, municipal, governmental or quasi-municipal corporations, summons may be served by leaving a copy with the chairperson of the county board or county clerk in the case of a county . . ."). The Court concludes that plaintiffs failed to serve properly Cook County when, in October 2004, plaintiffs left a copy of the summons and complaint with Brenda Smith, who is neither the County Clerk nor the Chairperson of Cook County Board. As defendants concede, plaintiffs properly served Cook County on February 10, 2006 when they left a copy with David Orr, the County Clerk.

Accordingly, the Court concludes that plaintiffs failed to serve Crawley and Cook County until approximately 550 days after they filed their complaint.

### 2. Good cause

Pursuant to Rule 4(m), the Court shall extend the time for service where the plaintiffs show good cause for the failure to serve defendants within 120 days. Fed. R. Civ. P. 4(m). "Good cause means a valid reason for delay, such as the defendant's evading service." *Coleman v. Milwaukee Board of School Directors*, 290 F.3d 932, 934 (7th Cir. 2002). The Court may, but is not required to, extend the deadline for plaintiffs who have *not* shown good cause for the failure. *Coleman*, 290 F.3d at 934.

In this case, the plaintiffs argue that the Court should extend the deadline because (1) defendants had actual notice of the lawsuit; (2) the defendants would not be prejudiced by the extension; and (3) the plaintiffs' claims will be barred by the statute of limitations if the case is dismissed and they are required to file a new lawsuit. None of these reasons constitutes "good cause" for delay in service, because none of these suggests that something outside of plaintiffs' control prevented them from serving defendants within 120 days. Accordingly, the Court concludes that plaintiffs have not shown good cause for their delay in effecting service.

Plaintiffs' arguments, rather than establishing good cause, are designed to convince the Court that despite a lack of good cause, the Court should still exercise its discretion to extend the service deadline from 120 days to 550 days. This the Court will not do. Most of the delays in this case (eighteen months after the case was filed, the parties were still briefing motions to dismiss) has been caused by the plaintiffs, who filed *six* motions to extend deadlines for filing briefs. The plaintiffs never filed a motion asking for an extension of the deadline to serve defendants. The Court might have been amenable to an extension to allow service within 120 days after several defendants filed a motion to dismiss on February 17, 2005, because that motion explicitly mentioned that plaintiffs had failed to serve Crawley and Cook County. Instead, the plaintiffs waited another year to serve those defendants.

The Court is also aware, as plaintiffs concede, that their claims against Crawley and Cook County will be time-barred if the Court does not extend the deadline for serving defendants. The Court might have been more sympathetic to plaintiffs' predicament if they were dealing with a shorter statute of limitations (such as Title VII's 90-day statute of limitations) or if plaintiffs had exhibited more diligence in this case. *See Davis v. National RR Passenger Corp.*, Case No. 96 C 8328, 1997 U.S. Dist. Lexis 12508 at * 8 (N.D. Ill. Aug. 19, 1997). As is stands, plaintiffs have no one but themselves to blame for their failure to serve these defendants before the statute of limitations had run.

The Court declines to extend the deadline for serving Crawley and Cook County. Normally, the Court would dismiss the claims without prejudice. Because, as plaintiffs concede, their claims against Crawley and Cook County are now time-barred, the Court dismisses with prejudice the claims against defendants Crawley and Cook County. *See Chico*, 2005 U.S. Dist. Lexis 24033 at * 19.[1]

### B. The remaining defendants' motion to dismiss

#### 1. Claims the Court already dismissed

In its earlier ruling, the Court ruled that Counts II, III, IV and V were barred by the Tax Injunction Act and principles of comity. Despite this ruling, plaintiffs included those allegations in their first amended complaint. For the same reasons it outlined in its previous ruling, the Court dismisses Counts II, III, IV and V.

For the same reasons, the Court previously ruled that most of Count I was barred by the Tax Injunction Act and principles of comity. Accordingly, the Court once again dismisses that

---

[1] The Court also notes that even if it had not granted Crawley's and Cook County's motion to dismiss based on Rule 4(m), the claims still would have been dismissed. The reasons the Court has dismissed and is dismissing the other claims in this suit are applicable to the claims against Crawley and Cook County as well.

portion of Count I that it previously ruled was barred by the Tax Injunction Act and principles of comity.

### 2. The remains of Count I

#### a. Failure to state a claim

As the Court explained in its previous opinion, the only part of Count I that was not barred by the Tax Injunction Act and principles of comity is the claim that defendants retaliated against plaintiffs for filing a state-court claim against Pappas. A claim that defendants launched a criminal investigation in retaliation for the exercise of first amendment rights is actionable under 42 U.S.C. § 1983. *Rakovich v. Wade*, 850 F.2d 1180, 1189 (7th Cir. 1987) ("The district court correctly found that an investigation conducted in retaliation for comments protected by the first amendment could be actionable under section 1983."); *Maloney v. City of Chi.*, 678 F. Supp. 703, 706 (N.D. Ill. 1987) (plaintiff stated a claim for a First Amendment violation under § 1983 where he alleged that defendants undertook a criminal investigation of his financial status to intimidate and harass him in retaliation for his having filed a lawsuit against the City). In its previous opinion, the Court dismissed Refund Research's § 1983 retaliation claim because it did not file the lawsuit or allege any other protected conduct. That defect has not been cured in the first amended complaint. Once again, the Court dismisses Refund Research's § 1983 retaliation claim for the same reasons. This time, the claim is dismissed with prejudice.

The Court next turns to whether plaintiff Levy has stated a claim for § 1983 retaliation against any defendant. As the Court noted in its previous opinion, individual liability under § 1983 "does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) (quoting *Sheik-Abdi v. McClellon*, 37 F.3d 1240, 1248 (7th Cir. 1994)). Once again, the only defendants alleged to have participated in the alleged constitutional deprivation (which is alleged retaliatory instigation of a

criminal investigation) are Pappas and Karaholios. Accordingly, the Court dismisses the remainder of Levy's Count I against defendants Mills, Korukulis, Devine and Houlihan in their individual capacities. This time, the claims are dismissed with prejudice.

Levy also asserts Count I against defendants in their official capacities. As the Court explained in its previous opinion, suits against government officials in their official capacities are suits against the governmental entity. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). In order to state a claim under § 1983 against the governmental entity, one must allege that the constitutional violation resulted from a policy or custom of the governmental entity. *Monell v. Department of Social Services of New York*, 436 U.S. 658, 690-691 (1978). Once again, Levy fails to allege that the *retaliatory conduct*–instigation of a criminal investigation–was due to a policy or custom, and the complaint allegations do not raise an inference of such a policy or custom. Accordingly, Levy has again failed to state a claim against defendants in their official capacities. The Court dismisses the remainder of Count I against defendants in their official capacities. This time, the dismissal is with prejudice.

### b. Statute of limitations

Finally, the defendants–Pappas and Karaholios–against whom Levy has stated a claim for retaliation (in their individual capacities) have moved to dismiss the claim as time-barred. Because §1983 does not contain a statute of limitations, federal courts adopt the forum state's statute of limitations for personal injury suits. *Ashafa v. City of Chi.*, 146 F.3d 459, 461 (7th Cir. 1998) (citing *Wilson v. Garcia*, 471 U.S. 261, 276 (1985)). The applicable statute of limitations in Illinois is two years. *Ashafa*, 146 F.3d at 462. A § 1983 claim accrues when the plaintiff "knows or should know that his or her constitutional rights have been violated." *Hileman v. Maze*, 367 F.3d 694, 696 (7th Cir. 2004) (citing *Kelly v. City of Chi*, 4 F.3d 509, 511 (7th Cir. 1993)).

In this case, Levy's allegations make clear that he knew about the criminal investigation no later than May 2001, more than two years before he filed his complaint. Levy was aware of Karaholios's and Pappas's involvement with the alleged constitutional violation even earlier. For example, Levy was present in February 1999 when Karaholios is alleged to have told Levy that he had been a prosecutor and that he was going to put Levy out of business. Levy interpreted the comment as a threat to institute criminal charges. In October 2000, in the presence of Pappas, Crawley and Korukulis, Karaholios told Levy that Levy was "committing fraud by submitting refund applications using Refund Research's FEIN number instead of the taxpayer's social security number." Karaholios added that Pappas planned to submit the applications to and file a complaint with the State's Attorney. Pappas picked up the refund applications Levy had with him, waived them at Levy and said, "This is fraud. I'm going to take this to the State's Attorney." The criminal investigation did not start until later; but, according to the complaint allegations, the investigation started no later than April 2001. That is when Levy alleges that Huang (of the State's Attorney's office) sent letters to Refund Research clients seeking information in connection with a grand jury investigation. Of course, if Levy did not know about the actual investigation until October 2002, then his claim would not be time-barred. As it turns out, though, Levy knew about the investigation by May 2001. Levy alleges in the first amended complaint that on May 25, 2001, "because of the letters that the State's Attorney was sending out to clients of Refund Research . . . Levy submitted a FOIA request to the Cook County Treasurer's office asking for 'a copy of the Complaint filed against Refund Research . . .'" Thus, Levy has plead himself out of court by pleading facts establishing that his § 1983 retaliation claim against Pappas and Karaholios accrued no later than May 25, 2001. The claim is time-barred.

Levy argues that his claim is not time-barred, because it is part of a continuing violation that continued into the years 2003 and 2004. Levy is mistaken. Levy is correct that the Supreme

Court has held, with respect to hostile environment sexual harassment claims under Title VII, that a claim is not time-barred if at least part of the claim occurred during the limitations period. The Supreme Court reasoned, based on Title VII's language:

> The statute does not separate individual acts that are part of the hostile environment claim from the whole for the purposes of timely filing and liability. And the statute does not contain a requirement that the employee file a charge prior to 180 or 300 days 'after' the single unlawful practice 'occurred.' Given, therefore, that the incidents constituting a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim. In order for the charge to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile environment.

*National RR Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002). The Seventh Circuit has applied the *Morgan* analysis to § 1983 employment discrimination claims, which are parallel to claims brought under Title VII. *Hildebrandt v. Illinois Dep't of Natural Resources*, 347 F.3d 1014, 1036 n. 18 (7th Cir. 2003). Although the language the Seventh Circuit used in *Hildebrandt* is broad, the Court concludes that the Seventh Circuit did not intend to extend *Morgan* beyond employment claims to other constitutional claims. The Court reaches this conclusion both because *Morgan* is based on the statutory interpretation of "employment practice" which has no relevance to Levy's § 1983 claim and because the Seventh Circuit has continued to apply the standard it set out in *Kelly v. City of Chi.* to § 1983 claims that are *not* employment discrimination claims. *See Hileman v. Maze*, 367 F.3d 694, 696 (7th Cir. 2004). Levy's retaliation claim is time-barred.

Because Levy's § 1983 retaliation claim against Pappas and Karaholios is time-barred, the claim is dismissed with prejudice.

### C. Plaintiffs' state law claims

A district court may "decline to exercise supplemental jurisdiction" over pendent state law claims if the court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). As the Seventh Circuit has explained, a district court's decision to relinquish supplemental jurisdiction is "the norm, not the exception." *Contreras v. Suncast Corp.*, 237 F.3d 756, 766 (7th Cir. 2001) (quoting *Fisher v. Information Resources, Inc.*, 873 F.2d 136, 140 (7th Cir. 1989)). Here, the Court has dismissed all of plaintiffs' federal claims. Accordingly, plaintiffs' state law claims–Counts VI, VII and VIII–are dismissed without prejudice.

### IV. Conclusion

For the reasons set forth above, the Court grants defendants' (James Crawley and Cook County's) motion (59) to dismiss and hereby dismisses with prejudice plaintiffs' claims against them. The Court also grants defendants' (Pappas, Mills, Karaholios, Korukulis, Devine and Houlihan's) motion (46) to dismiss. The Court dismisses with prejudice that portion of Count I that alleges that defendants retaliated against plaintiffs by instigating a criminal investigation. The Court dismisses without prejudice the remainder of Count I and Counts II through VIII. Although some of these claims are dismissed without prejudice, they cannot be litigated in this Court. Accordingly, the Court notes that plaintiffs will not be given leave to file an amended complaint. All other pending motions are denied as moot. Case dismissed.

ENTER:

_____ George M. Marovich

United States District Judge

DATED: 07/13/06